JEFFER MANGELS BUTLER & MITCHELL LLP
MARTIN H. ORLICK (Bar No. 083908)
*morlick@jmbm.com*
ANDREW I. SHADOFF (Bar No. 272319)
*ashadoff@jmbm.com*
STUART K. TUBIS (Bar No. 278278)
*skt@jmbm.com*
Two Embarcadero Center, 5th Floor
San Francisco, California 94111-3813
Telephone:  (415) 398-8080
Facsimile:  (415) 398-5584

Attorneys for Defendants HMK Holdings, LLC and Hovik M. Khaloian

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| GLENN HOWARD, GALE HOWARD and CHRISTINE HOWARD,<br><br>Plaintiffs,<br><br>v.<br><br>HMK HOLDINGS, LLC, and HOVIK M. KHALOIAN,<br><br>Defendants. | Case No. 2:17-cv-05701-DMG-JPR<br><br>**REPLY IN SUPPORT OF MOTION OF DEFENDANTS FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT**<br><br>[*Filed concurrently with Response to Statement of Genuine Disputes of Material Fact; Declaration of Richard Daggenhurst, Esq.; and Evidentiary Objections*]<br><br>Date:   June 8, 2018<br>Time:   2:00 p.m.<br>Ctrm.:   8C, 8th Floor<br>Judge:  Hon. Dolly M. Gee<br><br>Complaint filed: August 1, 2017<br>Trial date:   August 14, 2018 |

Defendants HMK Holdings, LLC ("**HMK**") and Hovik M. Khaloian ("**Mr. Khaloian**"; and together with HMK, "**Defendants**") respectfully submit this Reply in support of their Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment (the "**Motion**"; Docket No. 43).

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ..................................................................................... 5

II. SUMMARY JUDGMENT SHOULD BE GRANTED ................................ 7

    A. The Requested Accommodation Was Not Necessary to Provide Plaintiffs An Equal Opportunity to Use and Enjoy the House ............... 7

        1. The Extension Request Was Unrelated to Any Disability Because Mr. Howard Could Have Moved Out of the House ....... 7

        2. Plaintiffs Were Not Denied Any Equal Opportunities ................. 9

        3. Plaintiffs' Desire For Convenience Does Not Make Their Requested Accommodation Legally Necessary .......................... 10

    B. Even if the Alleged Wrongdoing is a Failure to Engage in the Interactive Process, Plaintiffs' Claims Fail For the Same Reasons ...... 12

    C. Plaintiffs' Negligence Claim Fails as a Matter of Law ........................ 15

    D. Plaintiffs' Prayer for Compensatory Damages Should Be Dismissed . 16

    E. Plaintiffs' Prayer For Punitive Damages Should Be Dismissed ........... 16

    F. There is No Basis for Liability Against Mr. Khaloian ......................... 17

    G. Plaintiffs Concede Their Prayer for Injunctive Relief is Moot ............. 17

III. CONCLUSION ......................................................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Auburn Woods I Homeowners Ass'n v. Fair Employment & Hous. Comm'n*,
   121 Cal.App.4th 1578 (2004) ................................................................................ 14

*Bayer v. Neiman Marcus Group, Inc.*,
   861 F.3d 853 (9th Cir. 2017) ................................................................................. 16

*David v. Hernandez*,
   226 Cal.App.4th 578 (2014) .................................................................................. 15

*Dropinski v. Douglas County, Neb.*,
   298 F.3d 704 (8th Cir. 2002) ................................................................................. 13

*Giebeler v. M&B Assocs.*,
   343 F.3d 1143 (9th Cir. 2003) ........................................................................ 10, 11

*Jacobs Farm/Del Cabo, Inc. v. W. Farm Serv., Inc.*,
   190 Cal.App.4th 1502 (2010) ................................................................................ 15

*Jensen v. Wells Fargo Bank*,
   85 Cal.App.4th 245 (2000) .................................................................................... 14

*Ling v. City of Los Angeles*,
   No. 2:11-cv-07774-SVW-E, 2012 WL 12844757
   (C.D. Cal. Nov. 14, 2012) ................................................................................... 7, 9

*Madrid v. KMF Fremont, LLC*,
   No. 11-cv-05804 NC, 2012 WL 12883831
   (N.D. Cal. Nov. 6, 2012) ..................................................................................... 8, 9

*Montano v. Bonnie Brae Convalescent Hosp.*,
   79 F.Supp.3d 1120 (C.D. Cal. 2015) ..................................................................... 14

*Peebles v. Potter*,
   354 F.3d 761 (8th Cir. 2004) ................................................................................. 13

*Protectus Alpha Nav. Co., Ltd. v. N. Pac. Grain Growers, Inc.*,
   767 F.2d 1379 (9th Cir. 1985) ............................................................................... 17

*Rodriguez v. Morgan*,
  No. CV 09-8939-GW, 2012 WL 253867
  (C.D. Cal. Jan. 26, 2012) .................................................................................. 13, 15

*Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*,
  102 F.3d 781 (6th Cir. 1996) .................................................................................. 12

*Smith v. Powdrill*,
  No. CV 12-06388 DDP, 2013 WL 5786586
  (C.D. Cal. Oct. 28, 2013) ........................................................................................ 14

*Storr v. Marik*,
  No. 13 C 3236, 2013 WL 6577374
  (N.D. Ill. Dec. 10, 2013) ........................................................................................... 8

*United States v. Cal. Mobile Home Park Mgmt. Co.*,
  107 F.3d 1374 (9th Cir. 1997) .................................................................................. 7

62030972                                     4                      Case No. 2:17-cv-05701-DMG-JPR
REPLY IN SUPPORT OF MOTION OF DEFENDANTS FOR SUMMARY JUDGMENT

## I. INTRODUCTION

Plaintiffs' opposition papers confirm that summary judgment is appropriate because there are no triable issues of material fact. The uncontroverted facts establish that Plaintiffs' requested accommodation—to remain in the House for five additional months—was not necessitated by Mr. Howard's disability or lack of stability but was purely a matter of convenience. Plaintiffs made that request because they did not want to be inconvenienced by moving to a different residence in the Los Angeles area before permanently moving to Florida. Contrary to Plaintiffs' allegations, the medical evidence is conclusive that nothing about Mr. Howard's disability prevented Plaintiffs from moving out of the House. As such, HMK was not legally obligated under any statutory scheme to grant or consider that accommodation. Summary judgment in Defendants' favor is therefore proper.

Plaintiffs regurgitate the allegations in their Complaint that their requested accommodation was necessary because Mr. Howard could not physically move from the House until January 2018 but ignore the uncontroverted facts that squarely defeat those allegations. In particular, Dr. Park and Dr. Murthy—the two VA doctors on whose letters Plaintiffs rely entirely for their claim that Mr. Howard could not be moved—testified that their statements related **only** to Mr. Howard's inability at the time to move **to Florida**. [UF 33, 42-43.] Plaintiffs could have presented evidence from either Dr. Park or Dr. Murthy supporting Plaintiffs' interpretations of those doctors' letters, but they did not do so. The reason why they failed to do so is obvious: Contrary to Plaintiffs' mischaracterizations of those letters, neither Dr. Park nor Dr. Murthy stated or implied that Mr. Howard could not physically be moved from the House to another residence in the Los Angeles area. [UF 31-32, 34, 41.] Indeed, the undisputed evidence is that Mr. Howard often was moved from the House, including for a 7-10 day period when he and his family lived at a motel. [UF 45-47, 61-62.]

These uncontroverted facts defeat all of Plaintiffs' claims because they prove

that the supposed disability-related basis for Plaintiffs' requested accommodation was nonexistent. In other words, because Mr. Howard could have moved from the House, he had no disability that legally obligated HMK to permit him and his family to continue living there after his tenancy was legally terminated. As such, there was no violation of FHA, FEHA or DPA and, accordingly, no failure to engage in the interactive process with respect to any valid requests.

Plaintiffs argue that, because Mr. Howard has a disability, his request to continue living in the House automatically was reasonable and necessary. But that proves too much and is not the law. The issue is not whether Plaintiffs were denied the ability to use and enjoy the House (where they remained until they left for Florida in late January 2018). The issue is whether Plaintiffs were denied an **equal opportunity** to use and enjoy the House because of a disability. The uncontroverted facts prove that there was no such denial of an equal opportunity. Rather, Plaintiffs were treated exactly as any non-disabled tenants whose tenancy was terminated pursuant to California law, who refused to enter into or even negotiate the terms of a new written lease, and who illegally held over for seven months without paying rent.[1] Because Plaintiffs had no disability-based need to remain in the House, Mr. Howard's disability does not create any legal obligation on the part of the landlord.

Plaintiffs rely on generic statements of law but do not identify any cases with facts similar to those present here. By contrast, the cases cited in Defendants' moving papers show that where, as here, a tenant's requested accommodation is not necessary, summary judgment for the landlord is proper.

Stated succinctly, while this case involves a person with a disability, there are no facts suggesting that, because of that disability, he was denied access to any housing to which he otherwise would have been entitled.

---

[1] At no time prior to April 30, 2018—ten days after Defendants filed this Motion—did Plaintiffs attempt to tender any portion of the back rent they owed. [*See* Declaration of Richard Daggenhurst, Esq. ("**Daggenhurst Decl.**"), ¶¶ 2-4.]

## II. SUMMARY JUDGMENT SHOULD BE GRANTED

### A. The Requested Accommodation Was Not Necessary to Provide Plaintiffs An Equal Opportunity to Use and Enjoy the House

#### 1. The Extension Request Was Unrelated to Any Disability Because Mr. Howard Could Have Moved Out of the House

Defendants' Motion explained that Plaintiffs' request to stay in the House for an additional five months beyond the termination of their month-to-month tenancy had no causal connection to any disability, and thus its denial did not violate any laws. *See United States v. Cal. Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1381 (9th Cir. 1997); *Ling v. City of Los Angeles*, No. 2:11-cv-07774-SVW-E, 2012 WL 12844757, *5 (C.D. Cal. Nov. 14, 2012). Plaintiffs' cited joint statement from the Departments of Justice and Housing and Urban Development confirms that "[a] housing provider can deny a request for a reasonable accommodation … **if there is no disability-related need for the accommodation**." [Plaintiffs' Request for Judicial Notice, Ex. 2 (Docket No. 44-18) at 7 (emphasis added).] Thus, Plaintiffs cannot establish the central element necessary for their FHA, FEHA or DPA claims.

In their Opposition, Plaintiffs repeatedly fall back on their now-disproven allegations that the requested accommodation was necessary because Mr. Howard could not physically move out of the House. [*See* Opposition at 2-3; Howard Decl., ¶¶ 8, 10.] However, Plaintiffs ignore the sworn testimony of Mr. Howard's treating and supervising physicians, Dr. Park and Dr. Murthy, respectively, which confirm that Mr. Howard could have moved out of the House to another residence in the Los Angeles area. [*See* UF 31-34, 39-42.] The only support for Plaintiffs' requested accommodations were the "To Whom It May Concern" letters from Drs. Park and Murthy, none of which in any way suggested that Mr. Howard could not be moved

from the House.[2] Plaintiffs' claims, therefore, have no foundation.

Although Plaintiffs try to brush it aside, this case is on all fours with *Storr v. Marik*, No. 13 C 3236, 2013 WL 6577374 (N.D. Ill. Dec. 10, 2013). There, as here, the tenants refused to consider a new lease with an increase in the rental amount and, in response, the landlord moved to evict the tenants after the lease expired. 2013 WL 6577374, at *1-2. The tenants then requested that they be accommodated by being permitted to remain in the premises as month-to-month tenants. *Id.* The landlord started eviction proceedings before any accommodation requests were made. The district court granted summary judgment for the landlord on the grounds that the requested accommodation had nothing to do with a disability. *Id.* at *4.

Similarly, here, while Plaintiffs contend their requested accommodation was necessary because of Mr. Howard's disabilities, the uncontroverted facts establish that there was no such causal link. Rather, as explained in the Motion and below, Plaintiffs' request was merely one of convenience for which no liability under FHA, FEHA or DPA attaches. Summary judgment is thus appropriate, as it was in *Storr*.

Plaintiffs also give short shrift to *Madrid v. KMF Fremont, LLC*, No. 11-cv-05804 NC, 2012 WL 12883831 (N.D. Cal. Nov. 6, 2012), which further establishes the lack of necessity here. There, summary judgment was granted for the landlord because the tenant's claim that a live-in caregiver was "necessary" to afford the tenant "an equal opportunity to use and enjoy" her apartment was proven false by the factual record. *Id.* at *5-6.

Likewise, here, the uncontroverted facts establish that Plaintiffs' request to remain in the House for five additional months was not "necessary." It was simply a

---

[2] Mrs. Howard's self-serving declaration statements that purport to discuss when Mr. Howard's doctors thought he would be "physically able to move" (*e.g.*, Howard Decl., ¶¶ 8, 10) are inadmissible hearsay and are clearly contradicted by those doctors' sworn statements. Mrs. Howard's baseless, hearsay statements purporting to express medical opinions by an unqualified lay witness are inadmissible and, in any event, do not create a genuine dispute of material fact.

matter of convenience.  That is not enough to sustain any of Plaintiffs' claims.

In addition, as in *Madrid*, Plaintiffs' request for a lengthy extension of their ability to remain in the House appears to be pretextual, as their request came only after HMK served the Notice to Quit (which itself did not happen until Plaintiffs had ignored HMK's request for a new lease for more than a month), at which point Plaintiffs argued the new lease was "illegal" and "invalid."

### 2. Plaintiffs Were Not Denied Any Equal Opportunities

Defendant's Motion explained that, as an independent basis for granting summary judgment, Plaintiffs failed to prove that the requested accommodation was necessary to afford them an "<u>equal opportunity</u> to use and enjoy [the] dwelling." *Ling*, 2012 WL 12844757, at *5, *quoting Giebeler v. M&B Assocs.*, 343 F.3d 1143, 1155 (9th Cir. 2003) (emphasis and brackets in original).

*Ling* shows that where, as here, a disabled person is denied the housing of her choice because she "did not meet a prerequisite for living there that has nothing to do with her disability," then there is no denial of equal opportunity and, therefore, summary judgment for the defendant is appropriate.  *Id.* at *6.

Plaintiffs completely fail to address the *Ling* case and its reasoning in their Opposition.  Plaintiffs also do not identify any "equal opportunity" of which they were deprived **because of** Mr. Howard's disability.  Nor could they.  Plaintiffs were told to leave the House because their month-to-month tenancy had terminated and they refused to sign or negotiate a new lease.  In other words, Plaintiffs were treated the same as any non-disabled renters who refused to sign or negotiate a new lease.  They were not deprived of any opportunities that would have been available to a person who was not disabled.  And, as the uncontroverted facts establish, there was no disability-related need for Plaintiffs to remain in the House beyond that time (in fact, Plaintiffs did remain in the House until late January 2018).

Accordingly, summary judgment in Defendants' favor is appropriate on each of the FHA, FEHA and DPA claims.

### 3. Plaintiffs' Desire For Convenience Does Not Make Their Requested Accommodation Legally Necessary

As expected, Plaintiffs argue that their requested accommodation was necessary because they did not desire to leave the House except to permanently move to Florida. Leaving the House might have resulted in the inconvenience to Plaintiffs to move, possibly put furniture in storage, and pay rent and another security deposit. In other words, it would have been inconvenient for Plaintiffs to leave the House, and move to a different nearby residence, before moving to Florida. As explained in the Motion, however, Defendants have no obligation under FHA, FEHA or DPA to accommodate Plaintiffs' convenience. [Motion at 25-27.]

Plaintiffs' Opposition cites no legal authority suggesting that mere convenience, even to a person with a disability, creates any legal obligation on the part of a landlord.

Instead, Plaintiffs argue they had the right to continue living in the House, even though Mr. Howard could have moved out at any time, because it was the "housing of their choice." [Opposition at 7.] Plaintiffs fail to provide any authority supporting this incorrect interpretation of the law. But the cases Plaintiffs do cite confirm that Plaintiffs' argument has no merit under the facts of this case.

For example, in *Giebler*, after discussing the requirement that an accommodation is necessary only if, without it, persons with disabilities "likely will be denied an equal opportunity to enjoy the housing of their choice," the Court explained that "[i]mposition of burdensome policies, including financial policies, can interfere with disabled persons' right to use and enjoyment of their dwellings, thus necessitating accommodation." 343 F.3d at 1155. In that case, the plaintiff was unemployed due to his disability and thus could not afford to live in the apartment. *Id.* The landlord's refusal to modify its policies and let the plaintiff's mother rent the apartment for him denied the plaintiff the equal opportunity to use the apartment because, had that accommodation been made, he would have

1 financially qualified to rent it.  *Id.* at 1156.

2       Here, there was no such denial of an equal opportunity to use and enjoy the House.  Nothing about any of HMK's financial or other policies interfered with Plaintiffs' right to use and enjoy the House.  Rather, it was Plaintiffs' failure to sign or negotiate a new lease prior to the termination of their tenancy that prevented them from continuing to remain in the House.  This is simply not a case in which a renter with a disability was denied an equal opportunity to enjoy the "housing of his choice" by any actions of the landlord.  Moreover, Plaintiffs' remaining in the House for six additional months without paying rent imposed a tremendous burden on HMK, which was unable to rent the house for fair market rent.  [*See* UF 64-65.]

11       If the facts were that Mr. Howard could not have moved from the House at all, then Plaintiffs might have a point.  **But that is not the case here**.  Here, the undisputed facts (including uncontroverted testimony from Mr. Howard's treating and supervising physicians) prove that Mr. Howard could be, and often was, moved from the House and driven to various places, including the VA and to a motel where he lived for approximately 7-10 days before moving permanently to Florida.  [UF 61-62.]  The doctors' notes on which Plaintiffs exclusively rely did not in any way suggest Mr. Howard could not be moved from the House to another residence.  [UF 31-32, 34, 41.]  Certainly, Plaintiffs have no evidence that Mr. Howard could not have moved out of the House due to a disability at any time after January 20, 2017, when HMK notified Plaintiffs that their month-to-month tenancy expired and presented them with a new lease with increased rent.  [*See* UF 9.]

23       Thus, Plaintiffs could have moved from the House to another residence once their month-to-month tenancy was legally terminated and they refused to sign or even negotiate the new lease requested by HMK.  They had no right to stay in the House and were thus not denied any equal opportunity to remain in the House.

27       Plaintiffs' position essentially is that the phrase "housing of their choice" gives disabled persons the right to demand to live in any home they choose under

any conditions they demand. That is not the law. The phrase "housing of their choice" is tethered both to a disability and to equal opportunity, such that a landlord cannot, by denying a reasonable accommodation, prevent a disabled renter from living in the housing of his or her choice <u>to which they otherwise would be entitled</u>. *See Smith & Lee Assocs., Inc. v. City of Taylor, Mich.*, 102 F.3d 781, 795 (6th Cir. 1996) (The FHA "links the term 'necessary' to the goal of equal opportunity . . . Plaintiffs must show that, but for the accommodation, they likely will be denied **<u>an equal opportunity</u>** to enjoy the housing of their choice.") (Emphasis added.)

In this case, Plaintiffs were not entitled to continue living in the House because their tenancy had expired and they refused to enter into or even negotiate the terms of a new lease. Their tenancy then was terminated pursuant to California law. There was no disability-related reason why their continued residence in the House was necessary. Plaintiffs simply had no right to continue living in the House under these circumstances.

It cannot be the law that a renter who is disabled can insist on continuing to live in a rental unit beyond the end of his tenancy despite there being no disability preventing the renter from leaving. If that was the law, then renters with disabilities could never be evicted because landlords would be obligated to provide never-ending "accommodations" of extended tenancies (like those Plaintiffs purported to demand in this case), even if the renters (like Plaintiffs here) had no disability-related reason to require those extensions. The FHA, FEHA, and DPA do not require this absurd result.

Summary judgment should be granted.

**B.  Even if the Alleged Wrongdoing is a Failure to Engage in the Interactive Process, Plaintiffs' Claims Fail For the Same Reasons**

Plaintiffs argue that HMK failed to engage in the interactive process, which constitutes an independent basis for liability. [Opposition at 9-13.] This argument cannot defeat summary judgment for three reasons.

First, failure to engage in the interactive process is not an independent basis for liability. This Court should follow the lead of Judge Wu, who examined cases split on whether the interactive process is a separate requirement in the housing context, and decided that it is not. *See Rodriguez v. Morgan*, No. CV 09-8939-GW (CWx), 2012 WL 253867, *8 (C.D. Cal. Jan. 26, 2012) ("This Court would not find that the interactive process is a separate requirement under the FHAA, FEHA and/or DPA in the housing context, such that a landlord's failure to engage in it gives rise to an independent basis for finding disability discrimination."). This analysis comports with other courts' holdings under comparable laws. *See Peebles v. Potter*, 354 F.3d 761, 769 (8th Cir. 2004) (where plaintiff's demand was not necessitated by his disability, employer was not liable under Rehabilitation Act for failing to engage in interactive process); *Dropinski v. Douglas County, Neb.*, 298 F.3d 704, 710 (8th Cir. 2002) (where accommodation was unreasonable under ADA as a matter of law, "any discussion concerning the interactive process … is superfluous").

Second, even though failure to engage in the interactive process "can be considered in determining whether [a landlord] failed to reasonably accommodate the tenant's disability/handicap," *Rodriguez*, 2012 WL 253867, at *8, Plaintiffs' claims still fail because the uncontroverted facts discussed above establish that (1) the requested accommodation for a lengthy extension was not necessary to accommodate Mr. Howard's disability, and (2) no equal opportunity was denied when the extension was not granted.[3] Stated otherwise, even if a failure to engage in the interactive process can form the basis for liability, it does not, by itself, satisfy

---

[3] Plaintiffs also ignore the fact that a reasonable extension was granted permitting them to remain in the House until July 15, 2017 (UF 21, 23, 25) even though they refused to negotiate over or even discuss the terms of a new lease (UF 18, 53). Plaintiffs also never offered to even pay the new rental amount until the day before their extended tenancy expired, which was nearly six months after HMK presented Plaintiffs with the new lease and rental amount. [UF 9, 50-51.] In addition, Plaintiffs never paid any rent during the six-month holdover period. [UF 63.]

all of the elements of a claim under FHA, FEHA or DPA. Plaintiffs cite no legal authority suggesting otherwise.

None of Plaintiffs' cited cases involved facts similar to this case, as they all involved accommodations clearly tied to disabilities, the denial of which prevented the disabled persons from an equal opportunity to either the housing or employment of their choice. *See Montano v. Bonnie Brae Convalescent Hosp.*, 79 F.Supp.3d 1120 (C.D. Cal. 2015) (quadriplegic nursing home facility resident's request to modify bathrooms); *Smith v. Powdrill*, No. CV 12-06388 DDP (RZx), 2013 WL 5786586 (C.D. Cal. Oct. 28, 2013) (tenant's request for companion dog); *Auburn Woods I Homeowners Ass'n v. Fair Employment & Hous. Comm'n*, 121 Cal.App.4th 1578 (2004) (same); *Jensen v. Wells Fargo Bank*, 85 Cal.App.4th 245 (2000) (employment case involving failure to accommodate a bank teller's PTSD).

Here, unlike in Plaintiffs' cited cases, the requested accommodation was not necessitated by any disability, but merely Plaintiffs' idiosyncratic desire to travel to Florida; *i.e.*, it was for their convenience only. Thus, even if HMK did not enter into the interactive process as to the final extension request, that failure cannot support a claim under FHA, FEHA or DPA.

Third, HMK engaged in a lengthy interactive process for the several months during which Plaintiffs demanded repeated extensions of their tenancy. After Plaintiffs failed to respond for over a month to HMK's request for a new lease and were served with the Notice to Quit, Plaintiffs declared that the new lease was "illegal" and "invalid" but still requested on March 11, 2017 to stay in the House until July 15, 2017. [UF 19.] Plaintiffs' request was granted on the date by which they demanded a reply. [UF 21, 23, 25.] Months went by with no questions or concerns from Plaintiffs and no efforts to negotiate the terms of the new lease. Plaintiffs then made a request for an indefinite extension. [UF 26.] HMK responded to that indeterminate request and denied it as unreasonable. [UF 35.] Days before they were required to vacate the House, Plaintiffs revised their request

to stay until January 22, 2018, but did not offer to pay the increased rental amount. [UF 36-37, 51.] In fact, Plaintiffs did not offer to pay the increased rent until the <u>day before</u> their extended tenancy expired, and never offered to sign the new lease. [UF 52-53.] Accordingly, to the extent the Court reaches this issue (and it need not for many reasons), HMK's actions should be found reasonable as a matter of law.

For these reasons, summary judgment should be granted for Defendants.

### C. Plaintiffs' Negligence Claim Fails as a Matter of Law

Defendants' Motion demonstrated that, because Plaintiffs' other claims fail as a matter of law, so too does their negligence claim. [Motion at 30-31.] Plaintiffs do not dispute that their negligence claim fails if their statutory claims fail. To the contrary, Plaintiffs' argument confirms that their negligence claim is based on the same alleged violations of law as their FHA, FEHA and DPA claims. [Opposition at 12-13.] Because those claims fail for the reasons set forth above and in the moving papers, the negligence claim fails with them.

The Motion further demonstrated that the failure to grant a reasonable accommodation does not support a claim for negligence. *See Rodriguez*, 2012 WL 253867, at *4 ("negligence cannot constitute a separate cause action for a failure to provide reasonable accommodation"). The Opposition does not rebut this argument.

Plaintiffs' cited cases are inapposite. *David v. Hernandez*, 226 Cal.App.4th 578 (2014), involved a collision between defendant's truck and plaintiffs' car. *Id.* at 581. *Jacobs Farm/Del Cabo, Inc. v. W. Farm Serv., Inc.*, 190 Cal.App.4th 1502 (2010), involved the effect on plaintiff's crops of pesticides sprayed on nearby lands. *Id.* at 1510. Neither case discusses whether violations of FHA, FEHA or DPA can support a claim for negligence. *Rodriguez*, which Plaintiffs ignore, says they do not. 2012 WL 253867, at *4. Under the same logic, Defendants' alleged failure to engage in the interactive process, which Plaintiffs contend is a separate violation, also cannot support a separate cause of action for negligence.

The negligence claim should be dismissed for either of these reasons.

### D. Plaintiffs' Prayer for Compensatory Damages Should Be Dismissed

Defendants' Motion demonstrated that Plaintiffs have no proof of any of the $500,000 they claim in "economic and non-economic damages." [Motion at 29-30.]

In their Opposition, Plaintiffs offer no evidence of any damages they incurred as a result of Defendants' alleged actions. Plaintiffs claim they incurred damages because they "suffered from emotional distress," had to defend the UD Complaint, and "were forced to file the instant lawsuit." [Opposition at 15.] However, Plaintiffs provide no evidence of any damages they suffered as to any of these items.

First, Plaintiffs admit they did not incur any costs relating to their supposed emotional distress and did not pay any other out-of-pocket expenses as a result of Defendants' alleged actions. [UF 66-67.] Thus, they have no such damages.

Second, Plaintiffs' counsel refused to let Plaintiffs answer questions regarding whether they have incurred any attorneys' fees prosecuting this lawsuit or whether this is a contingency fee case. [UF 68.]

Third, Plaintiffs offer no evidence that they have incurred any fees or costs in connection with the UD lawsuit.[4]

Thus, the Court at least should dismiss all of Plaintiffs' baseless claims for "economic and non-economic" damages and permit them to recover, at most, nominal damages or statutory damages to which they might be entitled under DPA (which are, at most $1,000, or treble the actual damages, of which there are none).[5]

### E. Plaintiffs' Prayer For Punitive Damages Should Be Dismissed

Defendants' Motion noted that Plaintiffs have no evidence to support their

---

[4] On May 22, 2018, the Los Angeles Superior Court reinstated the UD lawsuit and converted it to a civil action for damages. HMK plans to amend its complaint in that action to allege various tort claims against the Howards for damages relating to their tenancy. [*See* Daggenhurst Decl., ¶ 5.]

[5] *Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853 (9th Cir. 2017), cited by Plaintiffs, involved the Americans with Disabilities Act, not FHA, FEHA or DPA.

claim for $1,000,000 in punitive damages. [Motion at 32.] In their Opposition, Plaintiffs offer only a bare statement that they "have put forth evidence that Defendants intentionally and willfully" violated various laws. [Opposition at 14.] Plaintiffs fail to identify any such evidence suggesting Defendants' alleged actions rise to the level of "reckless or callous disregard" or "gross negligence or actual malice or criminal indifference" required to obtain punitive damages. *See Protectus Alpha Nav. Co., Ltd. v. N. Pac. Grain Growers, Inc.*, 767 F.2d 1379, 1385 (9th Cir. 1985). At most, Plaintiffs contend merely that Defendants did not grant their third request for an accommodation. Plaintiffs offer no evidence of malicious motive.

As such, Plaintiffs' prayer for punitive damages should be dismissed.

### F. There is No Basis for Liability Against Mr. Khaloian

Plaintiffs concede that HMK was the landlord (UF 1) and that HMK engaged in communications with Plaintiffs relating to the House (*e.g.*, UF 9, 11, 14, 22, 35, 48, 49). Thus, Plaintiffs have no evidence that Mr. Khaloian, in his personal capacity, did anything wrong. Mr. Khaloian should be dismissed as a defendant.

### G. Plaintiffs Concede Their Prayer for Injunctive Relief is Moot

In the Motion, Defendants explained that Plaintiffs' prayer for injunctive relief is moot in light of Plaintiffs' vacating the House with no intent to return. [Motion at 31-32.] Plaintiffs' Opposition does not debate this point, thereby conceding its merit. The prayer for injunctive relief, therefore, should be dismissed.

## III. CONCLUSION

For the reasons set forth above and in the moving papers, the Court should grant summary judgment in favor of Defendants on all of Plaintiffs' claims or, in the alternative, partial summary judgment on as many of those claims as appropriate.

| | | |
|---|---|---|
| DATED: May 25, 2018 | | JEFFER MANGELS BUTLER & MITCHELL LLP
MARTIN H. ORLICK
ANDREW I. SHADOFF
STUART K. TUBIS |
| | | By: /s/ Martin H. Orlick
MARTIN H. ORLICK
Attorneys for Defendants HMK Holdings, LLC and Hovik M. Khaloian |