**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| GLENN HOWARD; GALE HOWARD; CHRISTINE HOWARD, *Plaintiffs-Appellants*, v. HMK HOLDINGS, LLC; HOVIK M. KHALOIAN, *Defendants-Appellees.* | No. 18-55923 D.C. No. 2:17-cv-05701-DMG-JPR OPINION |

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted September 1, 2020
Pasadena, California

Filed February 23, 2021

Before:  Sandra S. Ikuta and Mark J. Bennett, Circuit
Judges, and Douglas P. Woodlock,[*] District Judge.

Opinion by Judge Bennett

---

[*] The Honorable Douglas P. Woodlock, United States District Judge
for the District of Massachusetts, sitting by designation.

## SUMMARY[**]

### Fair Housing

The panel affirmed the district court's grant of summary judgment in favor of the defendants in an action under the Fair Housing Amendments Act.

Plaintiffs Glenn Howard et al. sought to extend their tenancy in defendants' property due to Howard's medical condition. They alleged violation of 42 U.S.C. § 3604(f)(3)(B), which prohibits discrimination in the form of "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a] person equal opportunity to use and enjoy a dwelling." The panel held that, in order to establish a claim under § 3604(f)(3)(B), a plaintiff must show that absent an accommodation, his disability would cause him to lose an equal opportunity to use and enjoy a dwelling. The panel agreed with the district court that because plaintiffs did not establish a causal link between Howard's medical condition and the requested accommodation, defendants were under no obligation to extend the tenancy-termination date.

Plaintiffs also alleged that defendants were liable under the FHAA for failing to engage in an interactive process with them. Agreeing with the Third and Sixth Circuits, the panel held that there is no standalone liability under the FHAA for a landlord's failure to engage in an interactive process.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

Matthew M. Hilderbrand (argued) and Louis A. Chaiten, Jones Day, Cleveland, Ohio, for Plaintiff-Appellant Glenn Howard.

Christine Howard, Orlando, Florida, pro se Plaintiff-Appellant.

Gale Howard, Orlando, Florida, pro se Plaintiff-Appellant.

Andrew I. Shadoff (argued), Martin H. Orlick, and Stuart K. Tubis, Jeffer Mangels Butler & Mitchell, Los Angeles, California, for Defendants-Appellees

## OPINION

BENNETT, Circuit Judge:

Glenn Howard, his wife Gale Howard, and his daughter Christine Howard appeal the district court's award of summary judgment in favor of Defendants HMK Holdings, LLC, ("HMK") and Hovik M. Khaloian on the Howards' claim for violations of the Fair Housing Amendments Act of 1988 ("FHAA").   The district court found that (1) the Howards failed to show that "extending their tenancy was necessary because of [Glenn]'s medical condition," and (2) the FHAA does not provide for independent liability based on a landlord's failure to engage in the interactive

process.  We have jurisdiction under 28 U.S.C. § 1291 and affirm.[1]

The Howards were tenants in a home in Los Angeles, California.  Their original lease term was for one year beginning September 2012, with monthly rent of $4,700.  The parties never renewed the lease, which provided for a continuing month-to-month tenancy terminable by either the Howards or the landlord, HMK.[2]  The Howards lived in the home under the month-to-month tenancy for about three years, with no rent increase.  In January 2017, HMK proposed a new one-year lease with monthly rent increased to $5,966.  The Howards didn't respond to the proposed lease, and so HMK retransmitted it in February and told the Howards that if they didn't respond by a set date, HMK would terminate their tenancy.  The Howards didn't timely respond and so HMK sent them a 60-day Notice to Quit, terminating the tenancy as of April 25, 2017.  HMK explained that it wanted to rent the property at its fair market value.  One day later, Gale wrote HMK rejecting the proposed lease as "illegal" and "invalid."  She provided no further explanation.

In March 2017, Gale sent a second letter to HMK, acknowledging the Notice to Quit and requesting a two-month extension of the lease termination until July 15, 2017, as a reasonable accommodation of Glenn's disability.  Glenn had had a tumor removed from his brain in 1994 and then underwent extensive radiation treatment, which further

[1] Christine and Gale Howard's emergency motion to submit new evidence is DENIED.  The evidence they seek to submit about grab bars installed at the property is irrelevant to this appeal.

[2] HMK owns the home, and Khaloian is the manager and sole member of HMK.

HOWARD V. HMK HOLDINGS                    5

damaged his brain.  As a result, Glenn required 24-hour
supervision and care.  Although Glenn's condition had been
stable when the Howards moved into the home, his regular
medication regime stopped working in late 2016 and he
began to suffer from nocturnal seizures.   In her letter
requesting an accommodation, Gale explained that Glenn
was "brain [i]njured and needs 24-hour care" and that his
health was "very unstable."   The letter also stated that
Glenn's "neurologist is trying a new treatment right now that
[the family] believe[s] will make it possible for him to move
in July 2017."  The record contains no indication of how
much (if any) information about Glenn's medical condition
the Howards provided HMK before March 2017.

HMK acceded to Gale's request to extend the tenancy to
July 15, 2017, but also stated that no other extensions would
be granted.  In early May, HMK sent the Howards a letter
noting the July 2017 termination date, pro-rating the July
rent, and reiterating that no other extensions would be
granted.  The letter enclosed a revised 60-day Notice to Quit.

In late June, Gale sent HMK a request for an extension
of the reasonable accommodation for Glenn "until his
medical condition for his disability is safely stabilized after
which the landlord will be notified."  This request attached a
letter from Dr. Sung-Min Park, a doctor with the U.S.
Department of Veterans Affairs ("VA"), stating that Glenn
"has a medical condition that requires optimization before
he can safely embark on a long trip," and that the landlord
would be notified when Glenn "is appropriately stabilized
for long travel."  Neither Gale nor Dr. Park explained the
references to a "long trip" or "long travel."  A week later,
HMK wrote back denying this second request for an
extension, describing it as an "open ended accommodation"
that "does not appear to be reasonable."  HMK asked the

Howards to timely vacate the home on July 15, 2017. Gale responded on July 6, again requesting an extension, but this time specifically requesting a January 22, 2018, tenancy-termination date. Gale enclosed a letter from VA neurologist Dr. Kolar Murthy, stating that Glenn's medical condition "needs to be optimized before he can safely embark on a long trip" and that "[t]he family needs to stay until January 22, 2018, when [Glenn] is appropriately stabilized for long travel." Again, the letter did not explain the references to a "long trip" and "long travel."

Though they never communicated it to HMK, the Howards intended to move to Florida after vacating the home. Dr. Park was aware of this intention and wrote his letter because he needed more time to treat Glenn before Glenn "could make a cross-country visit." The Howards never discussed with Dr. Park moving to a new residence in Los Angeles or anywhere that did not require cross-country travel. Dr. Park testified that his letter did not concern Mr. Howard's ability to be physically moved from his home "at all." Dr. Murthy's opinion was that Glenn's medical condition made "riding on a long trip inadvisable." Dr. Murthy also stated that nothing in his letter addressed Glenn's inability to ride in a car for short trips or "to be transported in a car from one residence to another residence in the Los Angeles area." Gale confirmed that Dr. Murthy was concerned about Glenn safely making a trip from California to Florida.

In early July, Gale sent HMK a $4,700 check for "rent July 2017." On July 12, HMK returned the check and directed Gale to remit a check for the prorated July rent amount. On July 14, Gale sent another request for an extension, stating that the Howards were willing to pay $5,966 per month (the rental rate set in the lease HMK had

proposed and which Gale had rejected). HMK did not respond to the letter and on July 21, 2017, filed a state court complaint for unlawful detainer to recover possession of the house. The Howards filed their federal court complaint on August 1, 2017.

The Howards remained in the home until January 2018, when they permanently moved to Florida.[3] For about seven to ten days before vacating the home, the family lived in a motel in Burbank, California. The Howards (including Glenn) drove back and forth between the motel and the home during this time. Glenn also traveled by car from his home to his VA appointments on various occasions, including in 2017.

This court reviews grants of summary judgment de novo. *Harris v. Itzhaki*, 183 F.3d 1043, 1050 (9th Cir. 1999). We must view the evidence in the light most favorable to the nonmoving party to determine whether there are "any genuine issues of material fact" and "whether the district court correctly applied the relevant substantive law." *Id.* at 1050–51 (citation omitted). When determining whether a genuine issue of material fact exists, we "must draw all justifiable inferences in favor of the nonmoving party." *Suzuki Motor Corp. v. Consumers Union of U.S., Inc.*, 330 F.3d 1110, 1132 (9th Cir. 2003) (citation omitted).

I

The Howards base their FHAA discrimination claim on 42 U.S.C. § 3604(f)(3)(B), which prohibits discrimination in

---

[3] The district court noted that the record was unclear as to whether the Howards paid any rent from July 2017 to January 2018, though HMK claimed they didn't.

the form of "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."   The elements of a § 3604(f)(3)(B) claim are:

> (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation [in rules, policies, practices, or services] of the handicap may be necessary to afford the handicapped person an equal opportunity [i.e., equal to a non-handicapped person] to use and enjoy the dwelling; (4) that the accommodation [in rules, policies, practices, or services] is reasonable; and (5) that defendant refused to make the requested accommodation.

*Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1179 (9th Cir. 2006).  Review is "highly fact-specific, requiring case-by-case determination." *Id.* (citation omitted).

Here the third element is at issue—whether an accommodation in rules, policies, practices, or services was necessary to afford Glenn an opportunity, equal to a non-disabled person, "to use and enjoy" the house.  The district court granted summary judgment to Defendants, finding that Plaintiffs failed to show that the January 22, 2018 move-out date was *necessary* to accommodate Glenn's impairment, as opposed to simply making it more convenient because the Howards wanted to move to Florida.  We agree that making

"accommodations in rules, policies, practices, or services" was not necessary to afford the Howards "equal opportunity to use and enjoy a dwelling."

We start here with the undisputed fact that HMK offered the Howards, who were on a month-to-month tenancy, terminable at will, a new lease for one year at an increased rent. The Howards turned down the new lease. Whether they turned it down because they refused to pay an increased rent, or because they wanted to move to Florida sooner than one year, or for some other reason, isn't in the record, and doesn't matter. The Howards never argued (nor credibly could they) that they turned down the lease for any reason related to Glenn's disability.[4] Once the Howards turned down the new lease, HMK terminated their tenancy as of July 15, 2017.[5] Upon termination, the Howards were in the same position as a family with no disability that had had its lease terminated. The question is whether, in those circumstances, the Howards' request that HMK make an accommodation in its lease termination policy so that the Howards could remain in the home until January 22, 2018, was necessary to accommodate Glenn's disability.

"Necessary" suggests "something that 'cannot be done without.'" *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 923 (10th Cir. 2012) (quoting Oxford English Dictionary, vol. X at 276 (2d ed. 1989)); *see Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 105–07 (3d Cir. 2018) (defining "necessary" to mean

---

[4] The Howards have never presented any reason for Gale's description of the lease proposal as "illegal" or "invalid."

[5] The Howards do not contest that their tenancy expired on July 15, 2017.

"required, indispensable, essential"). To prove that an accommodation to HMK's lease termination policy was "necessary," the Howards must establish that, "but for the accommodation, they likely will be denied an equal opportunity [i.e., equal to the opportunity afforded non-disabled persons] to enjoy the housing of their choice." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1155 (9th Cir. 2003) (quoting *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 795 (6th Cir. 1996)). Thus, the inquiry is a causal one that "examines whether the requested accommodation . . . would redress injuries that otherwise would prevent a disabled resident from receiving the same enjoyment from the property as a non-disabled person would receive." *Anderson v. City of Blue Ash*, 798 F.3d 338, 361 (6th Cir. 2015) (citation omitted). The plaintiff's disability must cause the need for an accommodation in the "rules, policies, practices, or services." In other words, absent an accommodation, the plaintiff's disability must cause the plaintiffs to lose an equal opportunity to use and enjoy a dwelling. Thus, there must be a "causal link" between the requested accommodation and the plaintiff's disability. *See Giebeler*, 343 F.3d at 1155 (citation omitted).

Our decisions in *Giebeler v. M & B Associates*, 343 F.3d 1143, and *United States v. California Mobile Home Park Management Co.* (*Mobile Home II*), 107 F.3d 1374 (9th Cir. 1997), are instructive. *Giebeler* is an example of what causality looks like. The plaintiff's disability prevented him from working, which caused him to fail the tenancy's income requirements (thereby disqualifying him from a tenancy he otherwise would be qualified for), which would have been redressed by allowing his mother to cosign—the requested accommodation to the tenancy requirement. 343 F.3d at 1155–56. The causal link from disability to the need for an accommodation was evident, and we deemed the

accommodation necessary. *Id.* Conversely, in *Mobile Home II*, the plaintiff's daughter's disability did not cause a need for a waiver of the babysitter's parking fees. 107 F.3d at 1381. There was no evidence that her daughter's disability required the babysitter to use a car or to park it in spaces subject to the landlord's parking fees, or that waiving the fees was necessary to give the daughter an equal opportunity to use and enjoy the dwelling. *Id.* There was also no evidence that her daughter's disability was why the babysitter could not pay parking fees in violation of the landlord's policy. *Id.* Because there was no causal link, we described the requested accommodation as a convenience, not a necessity. *See id.* at 1380–81.

No causal link exists here. We cannot find a connection between Glenn's disability and his request to remain in the home until January 22, 2018. The Howards offered no admissible evidence that relocating Glenn to another residence in or near Los Angeles at the end of their tenancy would have jeopardized Glenn's health or safety. Both of Glenn's treating physicians, Dr. Park and Dr. Murthy, made clear they were not so opining. And, in fact, the record shows that Glenn could and did travel locally by car. Because there is no indication that Glenn would have suffered any injury because of his disability absent a tenancy extension, there is no causal link between his disability and the requested accommodation. *See Mobile Home II*, 107 F.3d at 1381. We do not doubt, as the Howards have claimed, that the prospect of having to move was "extreme[ly] stress[ful]" and would have needed "a lot of planning and extreme amount of care." But that does not come close to establishing that the requested accommodation, an extension of the tenancy until January 2018, was "necessary." *See Wis. Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 749 (7th Cir. 2006) (en banc)

("[N]ot every rule that creates a general inconvenience or expense to the disabled needs to be modified.").

We agree with the district court that "[b]ecause Plaintiffs have not established a causal link between [Glenn]'s medical condition and the requested accommodation, Defendants were under 'no obligation' to extend the tenancy-termination date, and the FHAA inquiry ends." *Howard v. HMK Holdings, LLC*, No. CV 17-5701, 2018 WL 3642131, at *9 (C.D. Cal. June 11, 2018).[6]

## II

Glenn argues that regardless of whether HMK is liable for discrimination under § 3604(f)(3)(B), HMK is liable for failing to engage in an "interactive process." In effect, Glenn asserts that the FHAA imposes "standalone" liability on a landlord when it fails to engage in an interactive process with a disabled tenant, even if the tenant cannot show that an

---

[6] Even if we were to find that a causal link exists, it is far from clear that § 3604(f)(3)(B) ever prohibits the eviction of a disabled tenant whose tenancy has expired for reasons unrelated to his disability. Reasonable accommodations are necessary only to the extent they provide a disabled person the "*equal opportunity to use and enjoy a dwelling*." 42 U.S.C. § 3604(f)(3)(B) (emphasis added). "Equal opportunity" means housing opportunities equal to those of a non-disabled person. It may be that, because no one whose tenancy has lawfully expired has any legal opportunity to "use and enjoy" the dwelling beyond the terms of their eviction, no disabled person subject to eviction for that reason can be deprived of an "equal opportunity." *See Cinnamon Hills*, 685 F.3d at 923 ("[W]hen there is no comparable housing opportunity for non-disabled people, the failure to create an opportunity for disabled people cannot be called necessary to achieve equality of opportunity in any sense."). But because a causal link is a necessary precondition to liability and is absent here, we need not reach the broader question of whether § 3604(f)(3)(B) ever bars the eviction of a disabled person whose tenancy has lawfully expired.

accommodation was necessary.  This is an issue of first impression in this court, and we hold that there is no "standalone" liability under the FHAA for a landlord's failure to engage in an "interactive process" with a tenant.

We begin with the text of the relevant section of the FHAA.  Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).  The text does not mention an "interactive process."  Nor does the FHAA mention an interactive process elsewhere.  *See* 42 U.S.C. § 3601 *et seq.*  Neither do the relevant regulations.  *See, e.g.*, 24 C.F.R. § 100.7 (describing liability for discriminatory housing practices); *id.* § 100.204 (discussing reasonable accommodations under the FHAA with examples).  This is dispositive.  The statute makes clear when liability attaches. We lack the authority to expand the bases for liability adopted by Congress.  The interactions between the tenant and landlord are, of course, relevant—reasonableness and "accommodation" cannot be determined in a vacuum.  But, at its heart, the FHAA does not forbid a landlord from failing to engage with a tenant requesting an accommodation that has no basis in law or fact.  Of course, a landlord acts in this regard at its own risk.[7]  But the statute prohibits failing to

---

[7] A Department of Housing and Urban Development guidance document encourages landlords to engage in an interactive process with tenants about their disability-related needs, because doing so is often "helpful."  U.S. Dep't of Hous. & Urb. Dev. & U.S. Dep't of Just., *Reasonable Accommodations Under the Fair Housing Act* 7 (May 17, 2004).  That may be sound advice, but it falls far short of requiring such a process.

"make reasonable accommodations," not failing to
"interactively engage."**8**

Glenn argues his position finds support in the decisions
of our sister circuits. We disagree. Two circuits have
declined to read an "interactive process" requirement into
the FHAA. The Sixth Circuit explained that "there is no . . .
language in the Fair Housing Act or in the relevant sections
of the Department of Housing and Urban Development's
implementing regulations that would impose . . . a duty [to
engage in an interactive process] on landlords and tenants."
*Groner v. Golden Gate Gardens Apartments*, 250 F.3d 1039,
1047 (6th Cir. 2001). Likewise, the Third Circuit held that,
notwithstanding the "interactive process" requirements in
the Americans with Disabilities Act ("ADA") and
Rehabilitation Act ("RA"), "the FHAA imposes no such
requirement." *Lapid-Laurel, L.L.C. v. Zoning Bd. of
Adjustment of Twp. of Scotch Plains*, 284 F.3d 442, 456 (3d
Cir. 2002).

The other circuits that have discussed a landlord's failure
to engage with a tenant do so only as part of the
§ 3604(f)(3)(B) failure to accommodate claim. The First
Circuit tied its consideration of a *complainant*'s failure to
participate in an interactive process to "the last element of

---

**8** We also note that the evidence here, viewed in the light most
favorable to Glenn, does not appear to support his "interactive process"
claim. The Howards refused to sign a lease that requested increased rent.
They then asked for a two-month extension of a lawful lease termination.
The landlord granted the extension. The Howards then sought additional
accommodations premised on evidence that Glenn could not safely
embark on a long trip—not that his health or safety required him to stay
in the house in which he was residing. And in the end, the Howards
overstayed their lawful tenancy by more than six months and may not
have been paying rent during that time.

the complainants' prima facie [failure to accommodate]
case"—whether "the party charged refused to make the
requested accommodation." *Astralis Condo. Ass'n v. Sec'y,
U.S. Dep't of Hous. & Urb. Dev.*, 620 F.3d 62, 67, 68 (1st
Cir. 2010) (denying the petition for review of the agency's
finding of FHAA liability for failure to accommodate).
Meanwhile, the Seventh Circuit did not even use the term
"interactive process" when it noted that, if a landlord knows
of a tenant's disability but is skeptical of the extent of its
effects, it is incumbent on the landlord to ask for more
information. *Jankowski Lee & Assocs. v. Cisneros*, 91 F.3d
891, 895 (7th Cir. 1996). The court did not fashion an
independent basis for liability out of the landlords' failure to
inquire. Instead, the decision rested on a violation of
§ 3604(f)(3)(B). *See id.* ("[The landlords] had a duty to
make a reasonable accommodation. They did not make a
reasonable accommodation, so they violated the FHA.").
These circuits have found that the interactive process matters
only if it sheds light on whether the elements of the statutory
claim have been met.

Glenn also argues that his position finds support in the
ADA and RA, as they provide some context regarding the
concept of an "interactive process." We find these statutes
(and our cases interpreting them) irrelevant to the issue at
hand. *See Lapid-Laurel*, 284 F.3d at 455 ("[T]he FHAA and
the [RA] do not bear the significant similarities that justified
importing the [interactive process] from the ADA to the
[RA]."). But even were that not so, Glenn's argument fails
on its own terms. *See Tauscher v. Phx. Bd. of Realtors, Inc.*,
931 F.3d 959, 964–65 (9th Cir. 2019).

Under the ADA and RA, "reasonable accommodation"
requires an employer "to initiate an informal, *interactive
process* with the individual with a disability in need of the

accommodation" to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." 29 C.F.R. § 1630.2(o)(3) (emphasis added); *see Vinson v. Thomas*, 288 F.3d 1145, 1154 (9th Cir. 2002). An employer who fails to engage in the interactive process would face liability if "a reasonable accommodation would have been possible." *Barnett v. U.S. Air, Inc.*, 228 F.3d 1105, 1116 (9th Cir. 2000) (en banc), *vacated on other grounds sub nom. US Airways, Inc. v. Barnett*, 535 U.S. 391 (2002). In *Snapp v. United Transportation Union*, 889 F.3d 1088 (9th Cir. 2018), we emphasized that liability in that situation depends on whether a reasonable accommodation was possible, not merely on the failure to engage the interactive process. *Id.* at 1095. That is, "there exists no stand-alone claim for failing to engage in the interactive process. Rather, discrimination results from denying an available and *reasonable accommodation*." *Id.* (emphasis added). Moreover, we have held that while the statutory language of the ADA makes the interactive process necessary in the employment context, the statutory language does not require the interactive process in the context of public accommodations and services, and therefore it is not applicable in that context. *Tauscher*, 931 F.3d at 964–65. The same is true here; without any statutory requirement, the interactive process simply does not apply to the FHAA.

Undeterred, Glenn contends on appeal that "failure to engage in the interactive process can result in liability—*if [a reasonable] accommodation would have been available*"— and that such a failure "excuse[s] a disabled tenant from having to prove the 'necessity' element." That imitation of our language in *Snapp* does not save Glenn's "interactive process" claim. It ignores that, in the ADA context, the "interactive process" requirement kicks in only "once the

*need* for accommodation has been established." *Vinson*, 288 F.3d at 1154 (emphasis added); *see Peebles v. Potter*, 354 F.3d 761, 769–70 (8th Cir. 2004) (finding employer was not liable for failing to engage in the interactive process where plaintiff's demand was not necessitated by his disability). And, of course, the FHAA requires necessity, not an interactive process. 42 U.S.C. § 3604(f)(3)(B).

In sum, the FHAA does not refer to an interactive process or base liability on a landlord's failure to interact, so there is no such liability under the FHAA. No other circuit has found that failing to engage in an interactive process provides an independent basis for liability under the FHAA. And even our own precedent rejects an independent basis of liability for the failure to engage in the interactive process in the context of other statutes involving disability. Thus, the district court properly granted summary judgment to Defendants on Glenn's interactive process FHAA claim.

**AFFIRMED.**